# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONNIE WHITE, Inmate #B31317,     )
                                   )
           Plaintiff,          )
                                     )
vs.                                  )        CIVIL NO. 05-594-MJR
                                     )
CHARLES L. HINSLEY, *et al.*,     )
                                   )
           Defendants.       )

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, an inmate in the Tamms Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

This case is now before the Court for a preliminary review of the ***amended complaint*** (Doc. 32) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the amended complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A;

portions of this action are subject to summary dismissal for failure to state a claim.

At the end of the lengthy amended complaint, Plaintiff states seven counts that do not clearly correspond to the factual allegations and legal claims presented in the body of the complaint. The Court is, therefore, somewhat perplexed at Plaintiff's intentions regarding organization. The Court concludes, however, that Plaintiff's factual allegations are organized in a way that more accurately expresses the legal claims arising from the stated facts than do the counts listed at the end of the complaint. Therefore, the Court will not use those counts as described by Plaintiff at the end of the amended complaint (Doc. 32), and will instead use the framework described below, which is based on the legal claims stated in paragraphs 65-111, and 116-123 of the amended complaint.[1]

Therefore, to facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* amended complaint (Doc. 32) into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

COUNT 1:    Against unspecified defendants for unconstitutional conditions at Tamms.

COUNT 2:    Against Defendants Clover, Walton, Newell, Turner, Crippen, Sherrard, Plott, Hawkins, Blankenship, and Bennefield, for unconstitutional use of excessive force and sexual assault.

COUNT 3:    Against Defendants Hill, Walker, Nance, Fornear, Allen, Powers, Clover, and Chandra, for failure to report the alleged sexual assault.

COUNT 4:    Against Defendants Plott, Rice, Caliper, and Powers, for intentionally

_____

[1]In the analysis of each count, the Court lists parenthetically the paragraph numbers in the complaint where the underlying claims may be found.

exposing Plaintiff to Hepatitis C.

**COUNT 5:**    Against unspecified defendants for unsanitary conditions of confinement.

**COUNT 6:**    Against Defendants Smith, Massey, Childers, Watkins, Hudson, Mason, Vicks, and Bernard for unconstitutional use of excessive force.

**COUNT 7:**    Against Defendants Smith, Bennefield, and Roper for failing to intervene to protect Plaintiff from unconstitutional use of excessive force.

**COUNT 8:**    Against Defendants Simmons, Smith, Simpson, Bennefield, and Roper for deliberate indifference to Plaintiff's serious medical needs.

**COUNT 9:**    Against Defendants Leslie and Swink for deliberate indifference to Plaintiff's serious medical needs.

**COUNT 10:**    Against Defendants Rhodes, Chandra, Stevens, Clover, Couch, Peppers, and Kwasniewski for deliberate indifference to his serious mental health needs.

**COUNT 11:**    Against Defendants Bennefield, Blankenship, Montgomery, Frey, Hinsley, Jones, Jackson, and Branche for violations of due process in forcing Plaintiff to wear a "spit hood."

**COUNT 12:**    Against Defendants Martin, Ivy, and Mitchell for unconstitutional retaliation.

**COUNT 13:**    Against unspecified defendants for transferring him to Tamms without due process.

**COUNT 14:**    Against Defendants Osman, Hosch, and Bonifield for denial of access to courts.

**COUNT 15:**    Against unspecified defendants for violations of the Americans with Disabilities Act.

**COUNT 16:**    Against unspecified defendants for violations of the Rehabilitation Act.

## COUNT 1

Plaintiff begins his statement of facts with a number of very general allegations about the conditions at Tamms Correctional Center. Plaintiff states that the harsh conditions at Tamms, the highest security institution in the state of Illinois, are harmful to mentally ill inmates. Furthermore,

the policies at Tamms are not designed to help mentally inmates progress in their behavioral development, but actually make their behavior worse. Many mentally ill inmates at Tamms do not receive mental health treatment and they are not transferred out of Tamms for mental health treatment, even when it is clear that they have decompensated psychologically. (¶¶ 65-84.)

All allegations listed in these paragraphs are far too general to state any claims under section 1983 because they do not indicate that Plaintiff, personally, was deprived of any constitutional right by a specific defendant acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988). Furthermore, a plaintiff lacks standing in a section 1983 action where he alleges that inmates generally are treated in contravention to the constitution, but not that plaintiff himself was so treated. *See Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996). Accordingly, Plaintiff has failed to state a claim under section 1983 on these general factual allegations; Count 1 is therefore **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 2

Plaintiff states that on April 21, 2004, Defendant Blankenship brought Plaintiff a lunch tray with a blue dot on it. Plaintiff had received a number of food trays with blue dots on them, and Plaintiff considered this blue dot to be evidence of food tampering by unspecified prison employees. Plaintiff began self-mutilating in an attempt to receive a housing change so that he would not continue to receive trays with a blue dot. Plaintiff refused to be examined by the unit nurse (Defendant Swink), so he was taken to see Defendant Powers in the health care unit, who ordered that Plaintiff be placed in restraints. Defendants Clover, Walton, Newell, Turner, and Crippen escorted Plaintiff to the restraint cell. While they were restraining him, Defendant Bennefield painfully twisted Plaintiff's hand, when Plaintiff asked him to stop, a "tussel [sic] broke out," and

Plaintiff had to be wrestled to the floor. Three additional officers (Defendants Sherrard, Plott, and Hawkins) were summoned to assist in restraining Plaintiff. Plaintiff states that while all of these officers were forcefully trying to restrain him, Defendant Bennefield "rammed his finger into Plaintiff['s] anus," sexually assaulting him. Defendants Blankenship, Newell, Plott, Crippen Jr., Hawkins, and Turner covered up the sexual assault by claiming that physical force was necessary because Plaintiff had spit on them. (¶¶ 89-90.)

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment, and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Based on these legal standards, the Court cannot dismiss Plaintiff's claim of improper use of excessive force. Accordingly, Plaintiff may proceed on Count 2 against Defendants Clover, Walton, Newell, Turner, Crippen, Sherrard, Plott, Hawkins, Blankenship, and Bennefield.

## COUNT 3

Plaintiff states that Defendants Hill, Walker, Nance, Fornear, Allen, Powers, Clover, and

Chandra, failed to report the sexual assault by Defendant Bennefield, in violation of the Eighth and

Fourteenth Amendments.  (¶¶ 91-92.)

The Court knows of no federal reporting requirement regarding documentation of sexual

assault of prisoners.  If such a requirement exists it is a creature of state law.  "The federal

government is not the enforcer of state law."  *Pasiewicz v. Lake County Forest Preserve Dist.*, 270

F.3d 520, 526 (7th Cir. 2001).  Thus, such a claim is not cognizable under section 1983, which

provides a cause of action for violations of rights secured by the constitution and federal law by state

actors.  *See West v. Atkins*, 487 U.S. 42, 49 (1988).  Plaintiff's creative argument that the failure to

document his alleged sexual assault constituted deliberate indifference to his serious medical needs

fails because he has not stated a medical need.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of

prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994).

> A "serious" medical need is one that has been diagnosed by a physician as mandating
> treatment or one that is so obvious that even a lay person would easily recognize the
> necessity for a doctor's attention.  *Laaman v. Helgemoe*, 437 F.Supp. 269, 311
> (D.N.H. 1977).  *See, e.g., Mahan v. Plymouth County House of Corrections*, 64 F.3d
> 14, 18 (1st Cir. 1995); *Monmouth County Correction Institution Inmates v. Lanzaro*,
> 834 F.2d 326, 347 (3rd Cir. 1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1731, 100
> L.Ed.2d 195; *Sheldon v. Penzley*, 49 F.3d 1312, 1316 (8th Cir. 1995); *Riddle v.*
> *Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996); *Hill v. DeKalb Regional Youth*
> *Detention Ctr.*, 40 F.3d 1176, 1186 (8th Cir. 1994).  Similarly, the Ninth Circuit
> regards a medical condition to be "serious" where "the failure to treat a prisoner's
> condition could result in further significant injury or the 'unnecessary and wanton
> infliction of pain,'" *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (quoting
> *Estelle*), and considers the following to be indications that a prisoner has a serious
> medical need: "The existence of an injury that a reasonable doctor or patient would

find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. at 1059-1060. We find these approaches to defining "seriousness" in the Eighth Amendment medical care context to be both sensible and workable, and shall therefore apply them here.

*Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "presence of a medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial pain". *Id.*

Plaintiff alleges no injury that required treatment, therefore he has not stated a medical need, nor an Eighth Amendment claim. Accordingly, Count 3 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

## COUNT 4

Plaintiff states that Defendant Plott intentionally placed a "spit hood" into Plaintiff's mouth that contained saliva of an inmate known to be infected with Hepatitis C, thus exposing him to the disease in violation of the Eight Amendment. Further, Plaintiff was placed into a cell that had previously been occupied by this Hepatitis C infected inmate who had smeared blood and feces on the walls. Plaintiff states that blood was smeared inside the chuckhole, so that when Defendant Rice held an open wound on Plaintiff's arm against the chuckhole, he intentionally exposed Plaintiff to Hepatitis C in violation of the Eighth Amendment. Plaintiff states that he was further harmed when his requests for Hepatitis testing were denied by Defendants Caliper and Powers. (¶¶ 93-94.)

Allegations that a prison official knowingly exposed an inmate to an infectious disease that might cause him future harm does state a claim of deliberate indifference to a serious medical need. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Accordingly, Count 4 cannot be dismissed at this point in the litigation, and Plaintiff may proceed against Defendants Plott, Rice, Caliper, and Powers on this count.

### COUNT 5

Plaintiff states that the conditions of the cell itself–the walls, ceiling, and bunk being smeared with the blood and feces of an inmate infected with Hepatitis C–constituted cruel and unusual punishment because of the high risk that Plaintiff might contract Hepatitis C. (¶¶ 95-96.)

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes,* 452 U.S. at 346 ; *See also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *See also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id.* The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim.   The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22.  The subjective component requires a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil*, 16 F.3d at 124.  In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994).  The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. at 842.  A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson*, 955 F.2d at 22.  It is well-settled that mere negligence is not enough. *See, e.g., David v. Cannon*, 474 U.S. 344, 347-48 (1986).

Regardless of whether Plaintiff has described conditions that might violate the Eighth Amendment, he has failed to state a claim because he has not named any defendants personally responsible for exposing him to these conditions, and therefore cannot show deliberate indifference. The reason that Plaintiffs, even those proceeding pro se, for whom the Court is required to liberally construe their complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Hoskins v.*

- 9 -

*Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) (a "short and plain" statement of the claim suffices under

Fed. R. Civ. P. 8 if it notifies the defendant of the principal events upon which the claims are based);

*Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) ("notice pleading requires the

plaintiff to allege just enough to put the defendant on notice of facts providing a right to recovery").

Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim

against that individual.  *See Collins v. Kibort*,143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot

state a claim against a defendant by including the defendant's name in the caption.").  Plaintiff has

named a total of 61 defendants in the caption of the complaint.  Plaintiff's allegations under this

count, however, are insufficient to state a claim against any of them because he has not named any

personally responsible for placing him in that cell.  See *Sanville v. McCaughtry*, 266 F.3d 724, 740

(7th Cir. 2001), *quoting  Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("to be held

individually liable, a defendant must be 'personally responsible for the deprivation of a

constitutional right' ").  Although Plaintiff was warned repeatedly regarding the necessity of

associating specific defendants with specific claims (see Docs. 22, 25, and 28), he still failed to

make the necessary connections under this count, to his own detriment.  Accordingly, Count 5 is

**DISMISSED** without prejudice.  See 28 U.S.C. § 1915A.

### COUNT 6

Plaintiff states that later in the day, Defendants Smith, Massey, Childers, Watkins, Hudson,

Mason, Vicks, and Bernard, without giving Plaintiff the opportunity to "cuff up," used two cans of

pepper spray upon him, then entered his cell, and beat and punched him, and hit him with a baton.

(¶¶ 97-98.)

As stated above in Count 2, the intentional use of excessive force by prison guards against

an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment, and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). Therefore, Plaintiff may proceed on the excessive force claim in Count 6 against Defendants  Smith, Massey, Childers, Watkins, Hudson, Mason, Vicks, and Bernard.

## COUNT 7

Plaintiff asserts that Defendants Smith, Bennefield, and Roper could hear him yelling during the use of excessive force described in Count 6, but did nothing to stop the beating, in violation of the Eighth Amendment. (¶¶ 97-98.) The Seventh Circuit has examined this argument as it pertains to police officers who fail to intervene when a fellow officer exceeds his authority, and they stated:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F,2d 480, 491 (7th Cir. 1987). Based on these legal standards, Plaintiff's claim against Defendants Smith, Bennefield, and Roper in Count 7 cannot be dismissed at this point in the litigation.

## COUNT 8

Plaintiff alleges that the pepper spray used during the incident described in Count 6 caused intense burning sensations in his eyes and on his body, but Defendants Simmons, Smith, Simpson, Bennefield, and Roper would not allow him to take a shower to wash off the chemical agent, in deliberate indifference to his serious medical needs. Defendant Simmons specifically denied him any medical treatment for injuries sustained in the alleged beating, then intentionally falsified records to indicate that Plaintiff refused treatment. (¶¶ 97-98.)

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi,* 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at —, 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth

Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;  it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm.  The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health – that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995); *see also Steele*, 82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction).  However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur.  *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

Based on these legal standards and Plaintiff factual allegations, Count 8 cannot be dismissed at this point in the litigation.  Plaintiff may proceed on this count against Defendants Simmons,

Smith, Simpson, Bennefield, and Roper.

**COUNT 9**

A week after the incidents described in the previous counts, Plaintiff saw Defendant Leslie on nurse sick call for a rash on his face, which Plaintiff believed was caused by the unsanitary spit hood he had been forced to wear.  He requested that Defendant Leslie document Plaintiff's belief that the spit hood caused the rash, but she did not.  Plaintiff later saw Defendant Swink on another nurse sick call for headaches, toothaches, and back pain as a result of the assaults described above. She gave Plaintiff Motrin for two days, but denied his requests for more Motrin because Plaintiff had stopped complaining to the nurses about his head and back pain.  Plaintiff argues that the failure to document his belief regarding the source of the rash, and the denial of Motrin after two days of treatment was deliberate indifference to a serious medical need. (¶¶ 99-100.)

Based on the legal standards described in Count 8, above, Plaintiff has failed to state a claim of deliberate indifference because he has not alleged that these defendants possessed the requisite culpable state of mind.  Furthermore, Plaintiff was given Motrin for two days.  That he wished that he could have received the medication longer does not state a claim, because mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment.  *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Accordingly, Count 9 is **DISMISSED** from the action without prejudice.  *See* 28 U.S.C. § 1915A.

**COUNT 10**

Plaintiff states that Defendants Rhodes, Chandra, Stevens, Clover, Couch, Peppers, and Kwasniewski falsified his mental health records in an effort to keep him housed at Tamms.  These defendants continue to indicate that Plaintiff does not have a mental illness, but merely a behavior

- 14 -

problem, despite a prior diagnosis of "impulse control disorder" and past treatment with Thorazine. He states that since his incarceration at Tamms, he has regressed psychologically. Furthermore, the conditions at Tamms have caused Plaintiff psychological trauma. Plaintiff states that these Defendants have acted with deliberate indifference to his serious mental health needs. (¶¶ 101-102.)

> Prison officials have a duty, in light of the Eighth Amendment's prohibition against cruel and unusual punishment, to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To determine whether an inmate's Eighth Amendment rights were violated by a deprivation, we examine the alleged violation both objectively and subjectively. *See id.* at 834, 114 S.Ct. 1970. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (quotation omitted). Second, the mental state of the prison official must have been "one of deliberate indifference to inmate health or safety." *Id.* (quotation omitted).

*Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001). The Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need." *Id.* at 734; *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983). *See also Gibson v. County of Washoe, Nev.*, 290 F.3d 1175 (9th Cir. 2002); *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (a doctor's decisions to remove patient from medication and to restore the medication without Lithium constitutes deliberate indifference to patient's psychiatric condition).

Plaintiff has submitted approximately 450 pages of his mental health records spanning more than five years prior to the filing of the complaint (Doc. 10). These records indicate that Plaintiff has received frequent treatment by mental health staff at Tamms, both at times of crisis and in ongoing therapy, which was stopped in 2005, not because Defendants believed Plaintiff did not have mental health needs, but because Plaintiff began refusing to attend. Taken together, these records indicate that Defendants recognize the seriousness of Plaintiff's mental health needs, and have responded appropriately with counseling and frequent evaluation. This is not deliberate

indifference.  That Plaintiff wishes his treatment were different is of no consequence.  As stated above, mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment.  *See Snipes*, 95 F.3d at 591.  Accordingly, Plaintiff has failed to state a claim of deliberate indifference to his serious mental health needs.  Count 10 is therefore **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915A.

### COUNT 11

Plaintiff states that Defendants Bennefield and Blankenship lied and reported that Plaintiff spit on them as justification for their use of excessive force described in Count 2.  Also as a result of their fabrication, Plaintiff is forced to wear a "spit hood."  Plaintiff states specifically that Defendant Montgomery threatens to make him wear the spit hood, despite his not having spit on anyone.  Defendant Montgomery's harassment and threats have caused Plaintiff humiliation, emotional distress, and anguish.  Plaintiff also states that the charges against him for spitting at the guards were dropped and therefore he also should have been removed from "spit hood" status.  Plaintiff alleges that Defendants Montgomery, Frey, Hinsley, Jones, Jackson, and Branche knew that the charges had been expunged, yet did nothing to remove Plaintiff from spit hood status.  Plaintiff claims that being threatened with a spit hood violates his due process rights under the Fourteenth Amendment.  (¶¶ 103-104.)

According to exhibits Plaintiff himself submitted with the initial complaint, Plaintiff has been forced to wear the spit hood, not because of the incident described in Count 2, but because he has frequently threatened to spit on medical and mental health personnel.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must

show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in restrictions on his confinement that impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Wearing a spit hood is a bodily restraint similar to handcuffs or shackles. It is well settled that being forced to wear handcuffs or being shackled as a disciplinary measure does not impose an atypical and significant hardship in relation to the "ordinary incidents" of confinement. *See Thielman v. Leean*, 282 F.3d 478, 483-84 (7th Cir. 2002) (use of handcuffs, leg chains, and waist belt not atypical and significant hardship in relation to confinement under *Sandin*); *Key v. McKinney*, 176 F.3d 1083, 1086-87 (8th Cir. 1999) (being shackled for 24 hours does not impose atypical and significant hardship to the ordinary incidents of prison life under *Sandin*). Furthermore, the Court notes that Plaintiff's complaint focuses on the threatened and not actual use of the spit hood. If the actual use of a bodily restraint for 24 hours or less does not violate the constitutional guarantees of due process, then neither does the threatened use of one. Accordingly, Plaintiff has failed to state a due process claim; Count 11 is **DISMISSED** with prejudice from the action.

## COUNT 12

Plaintiff states that after the alleged sexual assault described in Count 2, he contacted the Governor's office, prompting an internal investigation. In retaliation for that investigation, Plaintiff states that Defendant Martin wrote a false disciplinary report against him, and Defendants Ivy and Mitchell (on the adjustment committee) found Plaintiff guilty of the trumped-up charges, and disciplined him with loss of good conduct credit, time in segregation, demotion to c-grade, and

commissary restriction.  The adjustment committee report was expunged on administrative appeal. (¶¶ 105-06.)

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation.  *Id.*

Based on these legal standards and Plaintiff's allegations, Count 12 cannot be dismissed at this point in the litigation.  Plaintiff may proceed against Defendants Martin, Ivy, and Mitchell on this count.

## COUNT 13

Plaintiff states that unspecified defendants violated due process by transferring him to Tamms, the state's highest security prison, without notice or a hearing.  (¶¶ 107-08.)

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*.  In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest

- 18 -

in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

However, the Supreme Court recently determined that state inmates have a liberty interest under the due process clause of the Fourteenth Amendment in avoiding placement at the state's "supermax" prison. *See Wilkinson v. Austin*, 545 U.S. 209 (2005). Based on *Wilkinson*, the Seventh Circuit determined that the conditions at Tamms, the Illinois "supermax" prison, may pose an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Westefer v. Snyder*, 422 F.3d 570, 589-90 (7th Cir. 2005) (finding that the differences between the conditions at Tamms and the conditions at the Ohio State Penitentiary (analyzed in *Wilkinson*) are not "so qualitatively different as to require a different characterization of the facility for purposes of due process analysis under *Wilkinson*").

Based on these recent opinions, Plaintiff has alleged facts which may be sufficient to state a cognizable due process claim. Plaintiff has failed to state a claim here, however, because he has not specified by name any defendant personally responsible for the transfer. Accordingly, Count

- 19 -

13 must be **DISMISSED** without prejudice.  *See* 28 U.S.C. § 1915A.

COUNT 14

Plaintiff states that Defendants Osman, Hosch, and Bonifield, improperly denied him photocopies so that he might file his federal complaint, in violation of his right of access to courts. (¶¶ 109-10.)

Plaintiff cannot seriously contend that he has been denied access to photocopies or that restrictions placed on his photocopying have violated his access to courts.  At this point in the litigation–and the Court notes that the case is still in threshold status–Plaintiff has filed approximately **1,500 pages** of documents in the action.  This fact belies any assertion that Plaintiff has been denied access to the courts.  Accordingly, Count 14 is **DISMISSED with prejudice** from the action.  *See* 28 U.S.C. § 1915A.

COUNT 15

Plaintiff argues that the failure of the Department of Corrections to accommodate his mental illness to his satisfaction violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.  (¶¶ 116-19.)

The Supreme Court has held that the ADA applies to prisons.  *See Pennsylvania Department of Corrections v. Yeskey,* 524 U.S. 206 (1998).  The Seventh Circuit has held, however, that claims under the ADA must be raised in state court, not in federal court.  *Erickson v. Board of Governors for Northeastern Illinois University,* 207 F.3d 945 (7th Cir. 2000).  *See also Stanley v. Litscher*, 213 F.3d 340 (7th Cir. 2000); *Stevens v. Illinois Department of Transportation,* 210 F.3d 732 (7th Cir. 2000).  Therefore, Plaintiff's claims under the ADA, raised in Count 15, are **DISMISSED** without prejudice to his pursuing those claims in state court.  *See* 28 U.S.C. § 1915A.

- 20 -

## COUNT 16

Plaintiff also argues that the Illinois Department of Corrections has violated the Rehabilitation Act by sending him to Tamms without providing him adequate mental health treatment, and in fact treating him so that his mental illness is exacerbated.  Plaintiff states that he is a "qualified individual with a disability" under the Act.  (¶¶ 120-23.)

The Seventh Circuit has found that the Rehabilitation Act applies to prisons, following the Supreme Court's reasoning in *Pennsylvania Department of Corrections v. Yeskey,* 524 U.S. 206 (1998) (the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., applies to prisons). *Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000).  Contrary to ADA claims, which must be pursued in state court, an individual plaintiff may pursue claims in federal court under the Rehabilitation Act.

> As for the Rehabilitation Act, 29 U.S.C. § 794:  we agree with *Kilcullen v. New York State Department of Labor,* 205 F.3d 77, 79-80 (2d Cir. 2000), and *Garrett v. University of Alabama,* 193 F.3d 1214, 1218 (11th Cir. 1999), *cert. granted on a different issue*, --- U.S. ----, 120 S.Ct. 1669, 146 L.Ed.2d 479 (2000), that the ADA and the Rehabilitation Act are identical for purposes of § 5.   But the Rehabilitation Act also is a condition on the receipt of federal funds, and legislation under the spending power is not affected by *Kimel [v. Florida Board of Regents,* 528 U.S. 62 (2000)].   *See Oak Park Board of Education v. Kelly E.*, 207 F.3d 931, 935 (7th Cir.2000).   The Rehabilitation Act is no different in this respect from the IDEA, which *Oak Park* held adequate to support litigation against states in federal court. *Accord, Little Rock School District v. Mauney*, 183 F.3d 816, 831-32 (8th Cir. 1999). We therefore agree with the fourth, ninth, and eleventh circuits that the Rehabilitation Act is enforceable in federal court against recipients of federal largess. *Litman v. George Mason University*, 186 F.3d 544, 553 (4th Cir. 1999); *Clark v. California*, 123 F.3d 1267, 1271 (7th Cir. 1997); *Sandoval v. Hagan*, 197 F.3d 484, 493-94 (11th Cir. 1999).

*Stanley*, 213 F.3d at 344.  Therefore, the only remaining threshold question is whether plaintiff is an "individual with a disability" as defined in 29 U.S.C. § 705(20).

Except as otherwise provided in subparagraph (B), the term "individual with a

disability" means any individual who–
(I) has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and
(ii) can benefit in terms of an employment outcome from vocational rehabilitation services provided pursuant to subchapter I, III, or VI of this chapter [29 U.S.C.A. §§ 720 et seq., 771 et seq., or 795 et seq.].

29 U.S.C. § 705(20).

Plaintiff states that he is a qualified individual with a disability, and at this point in the litigation, the Court must take Plaintiff's allegation as true.  Plaintiff's claim is flawed, however, because Plaintiff does not specifically name defendants who deprived him of the programs guaranteed in the Rehabilitation Act.  Plaintiff states generally that the Illinois Department of Corrections deprived him, but that entity is not a named defendant in the action.  Nowhere in the complaint does he name specific defendants responsible for deprivations under the Act.  This failure to identify by name the individuals responsible for the deprivations dooms Plaintiff's claim.  Accordingly, Count 16 is **DISMISSED** without prejudice to Plaintiff's amending the complaint to identify defendants by name.  *See* 28 U.S.C. § 1915A.

### DISPOSITION

In summary, Plaintiff may proceed on Count 2 against Defendants Clover, Walton, Newell, Turner, Crippen, Sherrard, Plott, Hawkins, Blankenship, and Bennefield;[2] on Count 4 against Defendants Plott, Rice, Caliper, and Powers; on Count 6 against Defendants Smith, Massey,

---

[2]The Court notes that Plaintiff lists both a Robert Bennefield (¶27) and a Keith Bennefield (¶31) as defendants in the action.  Throughout the statement of facts, however, Plaintiff states claims against only "Defendant Bennefield," without specifying which Bennefield Plaintiff intends to refer.  Accordingly, the Court will allow Plaintiff to proceed against both Defendants Bennefield at this point in the litigation, however, Plaintiff must submit an amended complaint detailing which Defendant Bennefield is responsible for the various violations listed in the statement of facts.

Childers, Watkins, Hudson, Mason, Vicks, and Bernard; on Count 7 against Defendants Smith, Bennefield, and Roper; on Count 8 against Defendants Simmons, Smith, Simpson, Bennefield, and Roper; and on Count 12 against Defendants Martin, Ivy, and Mitchell.  Counts 1, 3, 5, 9, 10, 11, 13, 14, 15, and 16 are **DISMISSED** from the action as specified above.  All other named defendants are also **DISMISSED** from the action.

**IT IS HEREBY ORDERED** that Plaintiff shall complete and submit a U.S.M.-285 form for ***Defendants Bennefield, Bernard, Blankenship, Caliper, Childers, Clover, Crippen, Hawkins, Hudson, Ivy, Martin, Mason, Massey, Mitchell, Newell, Plott, Powers, Rice, Roper, Sherrard, Simmons, Simpson, Smith, Turner, Vicks, Walton, and Watkins*** within **THIRTY (30) DAYS** of the date of entry of this Memorandum and Order.  The Clerk is **DIRECTED** to send Plaintiff **30** U.S.M.-285 forms with Plaintiff's copy of this Memorandum and Order.  **Plaintiff is advised that service will not be made on a defendant until Plaintiff submits a properly completed USM-285 form for that defendant.**

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for ***Defendants Bennefield, Bernard, Blankenship, Caliper, Childers, Clover, Crippen, Hawkins, Hudson, Ivy, Martin, Mason, Massey, Mitchell, Newell, Plott, Powers, Rice, Roper, Sherrard, Simmons, Simpson, Smith, Turner, Vicks, Walton, and Watkins*** .  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on ***Defendants Bennefield, Bernard, Blankenship, Caliper,***

- 23 -

*Childers, Clover, Crippen, Hawkins, Hudson, Ivy, Martin, Mason, Massey, Mitchell, Newell,*

*Plott, Powers, Rice, Roper, Sherrard, Simmons, Simpson, Smith, Turner, Vicks, Walton, and*

*Watkins* in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process

in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and

Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties

will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

  With respect to former employees of Illinois Department of Corrections who no longer can

be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the

Marshal with the Defendant's last-known address upon issuance of a court order which states that

the information shall be used only for purposes of effectuating service (or for proof of service,

should a dispute arise) and any documentation of the address shall be retained only by the Marshal.

Address information obtained from ADDUCE pursuant to this order shall not be maintained in the

court file, nor disclosed by the Marshal.

  The United States Marshal shall file returned waivers of service as well as any requests for

waivers of service that are returned as undelivered as soon as they are received. If a waiver of

service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the

request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting

service on said defendant.  Said costs shall be enumerated on the U.S.M.-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new U.S.M.-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

### PENDING MOTIONS

Currently pending before the Court are Plaintiff's motions to supplement the complaint (Doc.

- 25 -

30), for direction from the court (Doc. 33), and for preliminary injunction and a temporary restraining order (Doc. 34).

### *Motion to Supplement*

Plaintiff asks that the court grant him leave to file additional exhibits in the case.  This request (Doc. 30) is **GRANTED**.  The Clerk is **DIRECTED** to file the proposed supplements.

### *Motion for Direction*

Plaintiff asks for direction regarding his motion for appointment of counsel.  The motion (Doc. 33) is **GRANTED**, and the Court offers the following.  Plaintiff's initial motion for appointment of counsel was denied without prejudice.  Plaintiff may renew his request for appointment of counsel after defendants have been served.

### *Motion for Preliminary Injunction*

Plaintiff requests a preliminary injunction in the action.  In considering whether to grant injunctive relief, a district court is obligated to weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence. Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction. *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999).

Based on the allegations in the complaint and motion, the Court is of the opinion that an

- 26 -

injunction should not issue in this matter at this time.  Accordingly, the request for temporary injunctive relief (Doc. 34) is **DENIED**.

### *Motion for Temporary Restraining Order*

Plaintiff seeks issuance of a temporary restraining order (TRO), which is an order issued without notice to the party to be enjoined that may last no more than ten days.  A TRO may issue without notice

> only if (1) it clearly appears from the specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

FED.R.CIV.P. 65(b).  Without expressing any opinion on the merits of any other of Plaintiff's claims for relief, the Court is of the opinion that a TRO should not issue in this matter.  Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*.

Moreover, federal courts must exercise equitable restraint in when asked to take over the administration of a prison, something that is best left to correctional officials and their staff.

Accordingly, the request for issuance of a temporary restraining order (Doc. 34) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:_____**

_____
                                            **DISTRICT JUDGE**

- 27 -